IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| JAMES A. BROWN #1893446 | § | |
| | § | |
| V. | § | A-14-CA-736-LY |
| | § | |
| SGT. OPERMAN, et al. | § | |

REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

TO:   THE HONORABLE LEE YEAKEL
      UNITED STATES DISTRICT JUDGE

The Magistrate Judge submits this Report and Recommendation to the District Court pursuant to 28 U.S.C. §636(b) and Rule 1(f) of Appendix C of the Local Court Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrates, as amended, effective December 1, 2002.

Before the Court is Plaintiff's complaint. Plaintiff, proceeding pro se, has been granted leave to proceed in forma pauperis.

STATEMENT OF THE CASE

At the time he filed his complaint pursuant to 42 U.S.C. § 1983, Plaintiff was confined in the Smith Unit of the Texas Department of Criminal Justice - Correctional Institutions Division. Plaintiff was convicted in Travis County of three counts of retaliation and sentenced to 15 years in prison on October 23, 2013.

Plaintiff alleges on January 26, 2014, while he was confined in the Travis County Correctional Complex, he received sack meals for all three of his meals. According to Plaintiff, a sack meal consisted of a sandwich, apple or orange, and a small bag of pretzels. Plaintiff estimates the sack meals amounted to approximately 1000 calories. Although Plaintiff's complaint is not

clear, it appears Plaintiff received sack meals for five consecutive days. According to Plaintiff, the sack meals were given to him in retaliation for him tossing an empty tray out of his food chute on January 25, 2014. On January 31, 2014, Plaintiff was allegedly told he would be receiving sack meals until he was transferred to TDCJ. Plaintiff claims subsequently "the door glass was broken," and Plaintiff told the jail officials to "restrain him that he was hungry and depend[ed] on the state to feed him." According to Plaintiff, he was searched, placed in a restraining chair for approximately three hours, and was under constant supervision.

Later, Plaintiff was transferred from Building 2 to Building 12, a maximum security building. Sgt. Sizemore allegedly ordered four "C-Tac officers" to take Plaintiff out of the chair and strip him. Plaintiff contends the force used was excessive and used in a humiliating manner. Plaintiff claims the officers took him out of the chair and placed him face down on a floor with old food, dried white residue, and stale water from the cell shower. Plaintiff alleges one officer placed a taser gun on his spine and threatened to tase him if he moved. Another officer allegedly held his left arm while another held his right arm. A different officer allegedly held down Plaintiff's left leg while another officer snatched off Plaintiff's pants, exposing his naked body to an unclean floor. Plaintiff argues there was no reasonable justification for the invasive search, and Plaintiff would have changed if they asked. Plaintiff contends the search violated his Fourth Amendment rights. On February 18, 2014, Plaintiff asserts he received a favorable ruling on his grievance regarding the breaking of the window on January 31. Subsequently, Plaintiff was returned to Building 2.

On February 24, 2014, Plaintiff asserts Sgt. Klatt and other officers came into his cell and pointed a taser at him. An officer allegedly told Plaintiff to keep his light uncovered. When Plaintiff responded he would cover his light when the officers left, the taser was allegedly pointed at his head

and he was told to put his hands behind his back.  He asserts he was handcuffed and taken to a different cell, where he broke another window, and then was once again placed in a restraining chair.  Four days later, Plaintiff was transferred to TDCJ.  Plaintiff sues Sgt. Operman, Sgt Sizemore, Sgt. Klatt, and four unnamed "C-Tac officers."  He seeks $12,000 in compensatory damages and $14,000 in punitive damages.

## DISCUSSION AND ANALYSIS

### A.    Standard Under 28 U.S.C. § 1915(e)

An in forma pauperis proceeding may be dismissed sua sponte under 28 U.S.C. § 1915(e) if the court determines the complaint is frivolous, malicious, fails to state a claim upon which relief may be granted or seeks monetary relief against a defendant who is immune from suit.  A dismissal for frivolousness or maliciousness may occur at any time, before or after service of process and before or after the defendant's answer.  Green v. McKaskle, 788 F.2d 1116, 1119 (5th Cir. 1986).

When reviewing a plaintiff's complaint, the court must construe plaintiff's allegations as liberally as possible. Haines v. Kerner, 404 U.S. 519 (1972).  However, the petitioner's pro se status does not offer him "an impenetrable shield, for one acting pro se has no license to harass others, clog the judicial machinery with meritless litigation and abuse already overloaded court dockets."  Farguson v. MBank Houston, N.A., 808 F.2d 358, 359 (5th Cir. 1986).

### B.    Inadequate Food

Plaintiff alleges he was given sack meals for three meals a day for several days after he threw a tray out of his food chute.  Plaintiff claims the meals did not provide him sufficient calories.  Plaintiff's claim will be analyzed under the Eighth Amendment, because Plaintiff was a convicted felon at the time of the incidents in question.

The Eighth Amendment prohibits cruel and unusual punishment. U.S. CONST. AMEND. VIII. Prison officials must provide humane conditions of confinement, ensure that inmates receive adequate food, clothing, shelter, and medical care, and take reasonable measures to guarantee the safety of the inmates. Farmer v. Brennan, 511 U.S. 825, 832 (1994). Conditions that result in "unquestioned and serious deprivations of basic human needs" or "deprive inmates of the minimal civilized measure of life's necessities" violate the Eighth Amendment. Hudson v. McMillian, 503 U.S. 1, 8–10 (1992); Rhodes v. Chapman, 452 U.S. 337, 347 (1981). Such a violation occurs when a prison official is deliberately indifferent to an inmate's health and safety. Farmer, 511 U.S. at 834. Deliberate indifference is more than mere negligence. Id. at 835. To act with deliberate indifference, a prison official must both know of and disregard an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference. Id. at 837.

Plaintiff's claim is frivolous. Inmates have a constitutional right to receive reasonably adequate food. George v. King, 837 F.2d 705 (5th Cir. 1987). However, the deprivation of food constitutes cruel and unusual punishment only if it denies a prisoner the minimal civilized measures of life's necessities. Talib v. Gilley, 138 F.3d 211, 214 n. 3 (5th Cir. 1998). In Talib, the Fifth Circuit stated missing fifty meals over a five-month period did not constitute the denial of the minimal civilized measures of life's necessities. Here, Plaintiff does not complain that he was completely deprived of food for even a single day. He merely complains he had to eat sack meals three times a day for several days. While Plaintiff may not have been satisfied with the sack meals, Plaintiff was not deprived of minimal civilized measures of life's necessities.

### C. Retaliation

Plaintiff appears to allege he was given sack meals in retaliation for his multiple refusals to go to court on January 14, 2014 or for throwing a tray out of his food chute because he was protesting his conditions. In order to state a valid claim for retaliation under § 1983, a prisoner must allege the following: (1) a specific constitutional right; (2) the defendant's intent to retaliate against the prisoner for the exercise of that right; (3) a retaliatory adverse act; and (4) causation. Jones v. Greninger, 188 F.3d 322, 324-325 (5th Cir. 1999). The plaintiff must establish that "but for the retaliatory motive the complained of incident ... would not have occurred." Woods v. Smith, 60 F.3d 1161, 1166 (5th Cir. 1995). Mere conclusory statements that retaliation occurred are not sufficient; "The inmate must produce direct evidence of motivation or, the more probable scenario, 'allege a chronology of events from which retaliation may plausibly be inferred.'" Id. (quoting Jackson, 864 F.2d at 1143 n.6). Plaintiff's allegations of retaliation are conclusory and fail to allege that but for the alleged retaliatory motive, he would not have been disciplined; thus, he fails to allege a claim of retaliation.

### D. Excessive Force

Plaintiff alleges excessive force was used against him at various times during his incarceration. "[T]o state an Eighth Amendment excessive force claim, a prisoner . . . must show that force was applied not in a good faith effort to maintain or restore discipline, but rather that the force complained of was administered maliciously and sadistically to cause harm." Rankin v. Klevenhagen, 5 F.3d 103, 107 (5th Cir. 1993) (internal quotation marks and citation omitted); see Hudson v. McMillian, 503 U.S. 1, 6–7 (1992). Five nonexclusive factors are considered in determining whether an excessive force claim has been established: (1) the extent of the injury

suffered; (2) the need for the application of force; (3) the relationship between the need and the amount of force used; (4) the threat reasonably perceived by the responsible officials; and (5) any efforts made to temper the severity of a forceful response. Baldwin v. Stalder, 137 F.3d 836, 839 (5th Cir. 1998).

Plaintiff's claims are meritless, as he does not allege any injury. Moreover, any injuries he may have suffered as jail officials worked to restore discipline after he caused disturbances, would not rise to a level cognizable under the Eighth Amendment.

### E.    Unlawful Search and Seizure

Finally, Plaintiff contends his Fourth Amendment rights were violated when officers stripped off his clothing after his transfer to a maximum security cell. "Strip searches have been repeatedly recognized as an important tool of prison security, and are not per se unconstitutional." McCrary v. Richardson, 738 F.3d 651, 656 (5th Cir. 2013). "Prisoners retain, at best, a very minimal Fourth Amendment interest in privacy after incarceration." Oliver v. Scott, 276 F.3d 736, 744 (5th Cir. 2002). "A prisoner's rights are diminished by the needs and exigencies of the institution in which he is incarcerated." Elliott v. Lynn, 38 F.3d 188, 190–91 (5th Cir. 1994). Therefore, courts "defer to the judgment of correctional officials unless the record contains substantial evidence showing their policies are an unnecessary or unjustified response to problems of jail security." McCreary, 738 F.3d at 657 (internal quotation marks omitted).

Plaintiff's allegations fail to state a claim of a Fourth Amendment violation. Plaintiff fails to plead specific facts demonstrating that the search was unnecessary or unjustified.


RECOMMENDATION

It is therefore recommended that Plaintiff's complaint be dismissed with prejudice as frivolous pursuant to 28 U.S.C. § 1915(e).

It is further recommended that the Court include within its judgment a provision expressly and specifically warning Plaintiff that filing or pursuing any further frivolous lawsuits may result in (a) the imposition of court costs pursuant to Section 1915(f); (b) the imposition of significant monetary sanctions pursuant to Fed. R. Civ. P. 11; (c) the imposition of an order barring Plaintiff from filing any lawsuits in this Court without first obtaining the permission from a District Judge of this Court or a Circuit Judge of the Fifth Circuit; or (d) the imposition of an order imposing some combination of these sanctions.

It is further recommended that Plaintiff should be warned that for causes of action which accrue after June 8, 1995, the Texas Department of Criminal Justice, upon receipt of a final order of a state or federal court that dismisses as frivolous or malicious a lawsuit brought by an inmate while the inmate was in the custody of the Department or confined in county jail awaiting transfer to the Department following conviction of a felony or revocation of community supervision, parole, or mandatory supervision, is authorized to forfeit (1) 60 days of an inmate's accrued good conduct time, if the Department has previously received one final order; (2) 120 days of an inmate's accrued good conduct time, if the Department has previously received two final orders; or (3) 180 days of an inmate's accrued good conduct time, if the Department has previously received three or more final orders.  See, TEX. GOV'T CODE ANN. § 498.0045 (Vernon 1998).

It is further recommended that Plaintiff be warned that if Plaintiff files more than three actions or appeals while he is a prisoner which are dismissed as frivolous or malicious or for failure to state a claim on which relief may be granted, then he will be prohibited from bringing any other

actions in forma pauperis unless he is in imminent danger of serious physical injury. See 28 U.S.C. § 1915(g). In the event this Report and Recommendation is accepted, adopted or approved, it is recommended that the Court direct the Clerk to e-mail a copy of its order and judgment to the TDCJ - Office of the General Counsel and the Pro Se Clerk for the United States District Court for the Eastern District of Texas.

## OBJECTIONS

Within 14 days after receipt of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636 (b)(1)(C). Failure to file written objections to the proposed findings and recommendations contained within this report within 14 days after service shall bar an aggrieved party from de novo review by the district court of the proposed findings and recommendations and from appellate review of factual findings accepted or adopted by the district court except on grounds of plain error or manifest injustice. Douglass v. United Servs. Auto. Assoc., 79 F.3d 1415 (5th Cir. 1996)(en banc); Thomas v. Arn, 474 U.S. 140, 148 (1985); Rodriguez v. Bowen, 857 F.2d 275, 276-277 (5th Cir. 1988).

To the extent that a party has not been served by the Clerk with this Report and Recommendation electronically, pursuant to the CM/ECF procedures of this District, the Clerk is ORDERED to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested.

SIGNED this 9th day of September, 2014.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE