FILED
2014 NOV 12 AM 9:28
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____ AD
DEPUTY

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

JAMES A. BROWN #1893446,
    Plaintiff,

-vs-                                                     Case No. A-14-CA-736-SS

SGT. OPERMAN, SGT. SIZEMORE, FOUR C-
TAC OFFICERS, and SGT. KLATT,
    Defendants.

## ORDER

BE IT REMEMBERED on this day the Court reviewed the file in the above-styled cause, and specifically Plaintiff James A. Brown's Complaint Under 42 U.S.C. § 1983 [#1] and the Amended Report and Recommendation of the Magistrate Judge [#11]. Brown did not file objections to the Report and Recommendation. Having reviewed the documents, the governing law, and the file as a whole, the Court now enters the following opinion and orders.

All matters in this case were referred to United States Magistrate Judge Andrew W. Austin for report and recommendation pursuant to 28 U.S.C. § 636(b) and Rule 1(e) of Appendix C of the Local Court Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrate Judges. Brown is entitled to de novo review of the portions of the Magistrate Judge's report to which he filed specific objections. 28 U.S.C. § 636(b)(1). All other review is for plain error. *Starns v. Andrews*, 524 F.3d 612, 617 (5th Cir. 2008). Nevertheless, this Court has reviewed the entire file de novo, and agrees with the Magistrate Judge's recommendation.



## Background

Brown is a Texas state inmate presently incarcerated in the Texas Correctional Institutions Division's Smith Unit in Lamesa, Texas. The events giving rise to Brown's complaint took place while Brown was incarcerated in the Travis County Correctional Complex in Del Valle, Texas, and are as follows. On January 25, 2014, Brown "threw [his meal] tray out of [his] food chute . . . then 'jacked' the food chute" and "threatened to break [his] cell door window[.]" Compl. [#1-1], Ex. 1 (Notice Disciplinary Board, Incident 140000427), at 2. As punishment for his behavior, Brown was, for five days, given a "sack lunch" containing a sandwich, a piece of fruit, and a bag of pretzels at mealtimes rather than food on a tray. On January 31, 2014, Brown "refused to accept [his] meal in a sack," threatened to punch a prison guard in the mouth, and "destroyed [his] cell door window." *Id.*, Ex. 1 (Notice Disciplinary Board, Incident 140000523), at 5.[1] Officers thereafter strip-searched Brown, forced him to lay on the ground unclothed for a period of time while pointing a Taser at him, and placed him in a restraining chair.

In an unrelated incident which occurred on February 24, 2014, nearly a month after the sack lunch incident, Brown "covered his cell light with a towel, obstructing staff's view of the cell at night." *Id.*, Ex. 1 (Notice Disciplinary Board, Incident 140000942), at 6. When told he could not cover the light, Brown "became aggressive," "had to be restrained," and was moved into a different cell while officers obtained a restraining chair. Brown states an officer was pointing a Taser at him

---

[1] Brown later appealed the Disciplinary Board's finding he was guilty of destroying the window on grounds he had been unable to present witnesses at the Disciplinary Board hearing, and the appellate officer found in his favor. *See id.*, Ex. 1 (Grievance), at 10. In his narrative to this Court, however, Brown admits he broke the window. *See* Compl. [#1] at 6 (stating he was placed in the restraining chair "for breaking a door glass").

during this time. While officers were waiting for the restraining chair, Brown broke the cell door window.[2] *Id.*

## Analysis

Brown's complaint alleges causes of action for "failure to meet nutritional standards," retaliation, and excessive force under 28 U.S.C. § 1983. As Brown is proceeding *in forma pauperis*, his complaint may be dismissed at any time if it is "frivolous or malicious" or "fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(i)–(ii); *Green v. McKaskle*, 788 F.2d 1116, 1119 (5th Cir. 1986). The Court must construe Brown's pro se complaint liberally. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Brown's pro se status, however, does not create an "impenetrable shield, for one acting pro se has no license to harass others, clog the judicial machinery with meritless litigation, and abuse already overloaded court dockets." *Farguson v. Mbank Houston, N.A.*, 808 F.2d 358, 359 (5th Cir. 1986).

### I. "Failure to Meet Nutritional Standards"

As did the Magistrate Judge, the Court analyzes Brown's claim he was deprived of adequate food under the Eighth Amendment. The deprivation of food states a cognizable claim under the Eighth Amendment "only if it denies a prisoner the minimal civilized measure of life's necessities." *Talib v. Gilley*, 138 F.3d 211, 214 n.3 (5th Cir. 1998) (internal quotation omitted). Brown's claim he received sack lunches containing a sandwich, a piece of fruit, and a bag of pretzels three times a day for five days fails even to approach that standard. *See, e.g., Gates v. Huibregtse*, 69 F. App'x 326, 326–28 (7th Cir. 2003) (prisoner placed on a diet of "'nutri-loaf,' a blended and baked compost

---

[2] It appears there may have been a third incident involving Brown breaking a window, as the disciplinary records he submitted with his complaint contain several documents with a third incident number, 140000948, referencing a broken window. *See* Compl. [#1-1], Ex. 1 (Findings Disciplinary Bd., Incident 140000948), at 8.

of regular prison food" for ten days, during which he repeatedly regurgitated the loaf, once vomited blood, and lost six pounds failed to state Eighth Amendment claim). The Court agrees with the Magistrate Judge this claim is wholly frivolous, and must be dismissed.

## II. Retaliation

Brown next states prison officers retaliated against him by subjecting him to a "campaign of harassments" following the sack lunch and first window-breaking incident. Brown identifies only the light-covering incident as comprising the "campaign of harassments."

To prevail on a claim for retaliation under § 1983, a prisoner must establish (1) a specific constitutional right; (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right; (3) a retaliatory adverse act; and (4) causation. *Morris v. Powell*, 449 F.3d 682, 684 (5th Cir. 2006). Brown fails to state a claim for retaliation, as he has articulated no specific constitutional right he exercised leading to the alleged "campaign of harassments." His retaliation claim will therefore be dismissed.

## III. Excessive Force

Finally, Brown alleges prison guards used excessive force when strip-searching and restraining him following the sack lunch incident. "[T]o state an Eighth Amendment excessive force claim, a prisoner . . . must show that force was applied not in a good faith effort to maintain or restore discipline, but rather that the force complained of was administered maliciously and sadistically to cause harm." *Rankin v. Klevenhagen*, 5 F.3d 103, 107 (5th Cir. 1993) (internal quotations and citation omitted). Factors which may be considered in evaluating a prisoner's claim include the need for the application of force, the relationship between the need and the amount of force that was used, the extent of injury inflicted, and the extent of the threat to the safety of staff and

inmates reasonably perceived by prison officials. *Whitley v. Albers*, 475 U.S. 312, 321 (1986) (internal quotation and citation omitted). "[A] plaintiff asserting an excessive force claim [is required] to have 'suffered at least some form of injury'" that is "more than . . . de minimis." *Glenn v. City of Tyler*, 242 F.3d 307, 314 (5th Cir. 2001). "[N]ot . . . every malevolent touch by a prison guard gives rise to a federal cause of action," *Hudson v. McMillian*, 503 U.S. 1, 9 (1992), and when "the ever-present potential for violent confrontation and conflagration ripens into *actual* unrest and conflict," prison officials are afforded extra deference in handling matters of internal security. *Id.* at 321–22.

The Court agrees with the Magistrate Judge that Brown fails to state a claim for excessive force, as he has failed to allege he suffered any injury and failed to set forth any facts suggesting the guards acted with malicious or sadistic intent other than a bare allegation they did so. *See Byers v. Navarro Cnty.*, No. 3:09-CV-1792-D, 2012 WL 677203, at *6 (N.D. Tex. Mar. 1, 2012) (prisoner's failure to present evidence she suffered any form of injury due to her placement in restraint chair or that guards acted maliciously in restraining entitled guards to summary judgment on qualified immunity). Further, even had Brown adequately alleged his excessive force claim, it would still fail, as restraining and strip-searching Brown were not unjustified responses to the actual unrest Brown created by breaking a window. Prison officials are permitted to use force to maintain peace and security within the prison. *See Whitley*, 475 U.S. at 321–22 (deference afforded prison administrators in executing practices and policies to maintain security extends to security measures "taken in response to an actual confrontation with riotous inmates").

## IV. Fourth Amendment

Finally, although Brown complains of the strip search in connection with his excessive force claim, to the extent Brown is also attempting to raise a Fourth Amendment challenge to the search, it is rejected. Prisoners retain "'at best, a very minimal Fourth Amendment interest in privacy after incarceration.'" *McCreary v. Richardson*, 738 F.3d 651, 656 (5th Cir. 2013) (quoting *Oliver v. Scott*, 276 F.3d 736, 744 (5th Cir. 2002)). Brown's Fourth Amendment challenge, if he indeed intends to raise one, appears to be to the propriety of the strip search in general, not to the specific manner in which it was carried out. *See* Compl. [#1] at 6 (complaining the search "expos[ed] his lower naked body to an unclean floor"). But strip searches "have been repeatedly recognized as an important tool of prison security, and are not per se unconstitutional." *Id.* Given Brown created a disturbance by breaking the window, it was reasonable for the guards to strip-search him. *See id.* at 657–58 (citing *Letcher v. Turner*, 968 F.2d 508, 510 (5th Cir. 1992)) ("[C]ase law has sanctioned public strip searches of prisoners creating a disturbance.").

## Conclusion

The Court therefore dismisses under 28 U.S.C. § 1915(e) Brown's claim for "failure to meet nutritional standards" as frivolous and the balance of his allegations for failure to state a claim upon which relief may be granted.

The Court advises Brown if he files more than three actions or appeals while he is in custody which are dismissed as frivolous or malicious or for failure to state a claim on which relief may be granted, he will be prohibited from bringing any other actions *in forma pauperis* unless he is in imminent danger of serious physical injury. 28 U.S.C. § 1915(g).

The Court further cautions Brown filing or pursuing any further frivolous lawsuits, similar to the one dismissed here, may result in serious sanctions or penalties, specifically: (1) the imposition of court costs pursuant to § 1915(f); (2) the imposition of significant monetary sanctions pursuant to FED. R. CIV. P. 11; (3) the imposition of an order barring him from filing any lawsuits in this Court without first obtaining the permission from a District Judge of this Court or a Circuit Judge of the Fifth Circuit; or (4) the imposition of an order imposing some combination of these sanctions.

The Court finally warns Brown for causes of action which accrue after June 8, 1995, the Texas Department of Criminal Justice—upon receipt of a final order of a state or federal court that dismisses as frivolous or malicious a lawsuit brought by an inmate while the inmate was in the custody of the Department or confined in county jail awaiting transfer to the Department following conviction of a felony or revocation of community supervision, parole, or mandatory supervision—is authorized to forfeit (1) 60 days of an inmate's accrued good conduct time, if the Department has previously received one final order; (2) 120 days of an inmate's accrued good conduct time, if the Department has previously received two final orders; or (3) 180 days of an inmate's accrued good conduct time, if the Department has previously received three or more final orders. TEX. GOV'T CODE § 498.0045.

Accordingly,

IT IS ORDERED that the Amended Report and Recommendation [#11] of United States Magistrate Judge Andrew W. Austin is ACCEPTED;

IT IS FURTHER ORDERED that Plaintiff James A. Brown's claim for "failure to meet nutritional standards" is DISMISSED WITH PREJUDICE as frivolous; and

IT IS FINALLY ORDERED that Plaintiff's remaining claims are DISMISSED WITHOUT PREJUDICE for failure to state a claim upon which relief may be granted.

SIGNED this the 10th day of November 2014.

/s/ Sam Sparks
SAM SPARKS
UNITED STATES DISTRICT JUDGE